Chandler P. Thompson (11374)
David P. Billings (11510)
**AKERMAN SENTERFITT LLP**
170 South Main Street, Suite 950
Salt Lake City, Utah 84101
Telephone:  (801) 907-6900
chandler.thompson@akerman.com
david.billings@akerman.com

*Attorneys for Defendants Bank of America, N.A. individually and as successor by merger to BAC Home Loans Servicing, L.P., and Countrywide Home Loans, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| DEANNA F. HADLEY, | ) | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff, | ) | |
| vs. | ) | |
| BANK OF AMERICA, N.A., a foreign corporation, COUNTRYWIDE HOME LOANS, INC., a foreign corporation, BAC HOME LOANS SERVICING, L.P., a foreign entity, and JOHN or JANE DOES 1-10, | ) | Case No. 2:12-cv-00411-BSJ<br><br>Judge Bruce S. Jenkins |
| Defendants. | ) | |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants Bank of America, N.A., individually and as successor by merger to BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans Servicing, L.P. (**BANA**), and Countrywide Home Loans, Inc. (**CHL**) (collectively **defendants**) respectfully move for summary judgment on all causes of action in the second amended complaint (**SAC**) filed plaintiff Deanna F. Hadley (**plaintiff**).  In support of their summary judgment motion, defendants state as follows:

{25501379;3}

Discovery has closed, and plaintiff has failed to produce prima facie evidence supporting all necessary elements of any of her claims against defendants. including primarily, the element of damages.   Defendants are entitled to summary judgment for the reasons detailed in the accompanying memorandum of points and authorities in support of this motion.

Dated this 15th day of February, 2013.

**AKERMAN SENTERFITT LLP**

*/s/ Chandler P. Thompson*
Chandler P. Thompson
David P. Billings
*Attorneys for Defendants Bank of America,*
*N.A. individually and as successor by*
*merger to BAC Home Loans Servicing, L.P.,*
*and Countrywide Home Loans, Inc.*

## TABLE OF CONTENTS

MEMORANDUM AND POINTS OF AUTHORITIES .................................................................... 1

INTRODUCTION ............................................................................................................ 1

STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS ...................................... 5

LEGAL STANDARD ..................................................................................................... 22

ARGUMENT ................................................................................................................. 1

    I.     Plaintiff's Breach of Contract Claim Fails Because Plaintiff Cannot Establish She Suffered any Compensable Damages as a Result of Defendants. ...........................................................................................1

        A.    Plaintiff Cannot Establish that She Suffered Actual Damages................................................................................ 1

        B.    Plaintiff's Failure to Provide Proof of Insurance Precludes Her Claim.................................................................... 4

        C.    Plaintiff's Breach of Contract Claim is Moot............................ 6

    II.    Plaintiff's Intentional / Negligent Infliction of Emotional Distress Claim Fails. ...........................................................................6

    III.    Plaintiff's FDCPA Claim Fails as a Matter of Law................................10

        A.    The FDCPA Does Not Apply to Defendants Because the Undisputed Facts Establishes that as a Matter of Law Defendants are Creditors, not Debt Collectors. ........................ 10

        B.    Even Assuming *Arguendo* the FDCPA Did Apply to Defendants, Plaintiff has No Evidence of Actual Damages. ................... 13

    IV.    Plaintiff Cannot Enforce the FCRA Against Defendants. ....................................14

    VII.    Plaintiff's Punitive Damages Claim Fails as a Matter of Law..............................18

    VI.    A Notice of Default Does Not Meet the Definition of a Wrongful Lien. ...........................................................................................19

    VII    Plaintiff's RESPA Claim Fails as a Matter of Law. ...............................21

    VIII.    Plaintiff's Declaratory Relief Claim is Moot because the Notice of Default has been Cancelled and No Foreclosure Sale is Pending. ........................24

CONCLUSION.............................................................................................................. 24

CERTIFICATE OF SERVICE ......................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adler v. Wal-Mart Stores, Inc.*,
 144 F.3d 664 (10th Cir. 1998) ...................................................................................23, 24

*Albury v. Am. West Bank*,
 1:10-cv-197-TS, 2011 WL 902617 (D. Utah Mar. 15, 2011)................................................23

*Alcala v. Popular Auto, Inc.*,
 828 F. Supp. 2d 437 (D. Puerto Rico 2011)........................................................................16

*Alta Health Strategies, Inc. v. CCI Mech. Serv.*,
 930 P.2d 280 (Utah Ct. App. 1990) .....................................................................................2

*Alvarez Melendez v. Citibank*,
 705 F.Supp. 67 (D. Puerto Rico. 1988).............................................................................15

*Ams. Disabled for Accessible Pub. Transp. v. SkyWest Airlines, Inc.*,
 762 F. Supp. 320 (D. Utah 1991).....................................................................................4, 18

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)........................................................................................................23, 24

*Anesthesiologists Assocs. v. St. Benedict's Hosp.*,
 884 P.2d 1236 (Utah 1994).................................................................................................2

*Applied Genetics v. First Affiliated Securities*,
 912 F.2d 1238 (10th Cir. 1990) ......................................................................................23, 24

*Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.*,
 709 P.2d 330 (Utah 1985)...................................................................................................2

*Atlas Corp. v. Clovis Nat'l Bank*,
 737 P.2d 225 (Utah 1987)..................................................................................................19

*Bair v. Axiom Design, L.L.C.*,
 20 P.3d 388 (Utah 2001).....................................................................................................5

*Beck v. Farmers Ins. Exchange*,
 701 P.2d 795 (Utah 1985)....................................................................................................2

*Behrens v. Raleigh Hills Hosp., Inc.*,
 675 P.2d 1179 (Utah 1983)................................................................................................18

*Bentley v. Bank of America, N.A.,*
773 F. Supp. 2d 1367 (S.D. Fla. 2011) ...............................................................11

*Blakely v. USAA Cas. Ins. Co.,*
633 F.3d 944 (10th Cir. 2011) .............................................................................7

*Boggio v. USAA Federal Sav. Bank,*
696 F.3d 611 (6th Cir. 2012) ..............................................................................16

*Bonneville v. Green River Dev't,*
164 P.3d 433 (Utah Ct. App. 2007) ......................................................................6

*Brown v. Morris,*
243 Fed. Appx. 31 (5th Cir. 2007) (unpublished)...............................................11

*Cabaness v. Thomas,*
232 P.3d 486 (Utah 2010) ....................................................................................4

*Cassara v. DAC Services, Inc.,*
276 F.3d 1210 (10th Cir. 2002) ..........................................................................24

*Castillo v. Atlanta Cas. Co.,*
939 P.2d 1204 (Utah Ct. App. 1997) ...................................................................3

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986).....................................................................................23, 24

*Chiang v. Verizon New England Inc.,*
595 F.3d 26 (1st Cir. 2010)..........................................................................15, 16

*Conaway v. Smith,*
853 F.2d 789 (10th Cir. 1988) ............................................................................24

*Concepts, Inc. v. First Sec. Realty Servs., Inc.,*
743 P.2d 1158 (Utah 1987) (per curiam) ............................................................20

*DiGianni v. Stern's,*
26 F.3d 346 (2d Cir. 1994)..................................................................................15

*Dill v. City of Edmond,*
155 F.3d 1193 (10th Cir. 1998) ..........................................................................14

*Eleopulos v. McFarland and Hullinger, LLC,*
145 P.3d 1157 (Utah Ct. App. 2006) ...................................................................1

*Fisher v. Taylor*,
    572 P.2d 393 (Utah 1977)...............................................................................................6

*FTC v. Check Investors*,
    502 F.3d 159 (3d Cir. 2007)..........................................................................................12

*Fuerschbach v. Southwest Airlines Co.*,
    439 F.3d 1197 (10th Cir. 2006) ...................................................................................23

*Gonzalez-Bencon v. Doral Bank*,
    759 F.Supp.2d 229 (D. Puerto Rico 2010).................................................................15

*Hall v. Bellmon*,
    935 F.2d 1106 (10th Cir. 1991) ...................................................................................23

*Hansen v. Mountain Fuel Supply Co.*,
    858 P.2d 970 (Utah 1993).........................................................................................8, 9

*Harnicher v. Univ. of Utah Med. Ctr.*,
    962 P.2d 67 (Utah 1998)...........................................................................................6, 8

*Hawthorne v. Citicorp Data Systems, Inc.*,
    216 F.Supp.2d 45 (E.D.N.Y.2002) .............................................................................15

*Hoverman v. CitiMortgage*,
    2:11–cv–118, 2011 WL 3421406 (D. Utah Aug. 4, 2011) ........................................24

*Hutter v. Dig-It, Inc.*,
    219 P.3d 918 (Utah 2009) ............................................................................................20

*In re Richardson*,
    23 B.R. 434 (Bankr. D. Utah 1982) .............................................................................20

*Jackson v. Rich,*
    28 Utah 2d 134, 499 P.2d 279 (1972) ........................................................................4, 6

*James v. Wells Fargo Bank, NA Corp.*,
    No. 2:10-CV-1205 TS, 2011 WL 1874707 (D. Utah May 11, 2011)..........................11

*Jensen v. American's Wholesale Lender*,
    No. 1:09-cv-169, 2010 WL 2720745 (D. Utah Jul. 8, 2010), *aff'd*
    425 Fed. Appx. 761..................................................................................................16, 17

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
    559 U.S. ___, 130 S.Ct. 1605 (2010)........................................................................10, 14

*Johnson v. City of Bountiful*,
  996 F. Supp 1100 (D. Utah 1998)................................................................24

*Johnson v. Rodrigues*,
  293 F.3d 1196 (10th Cir. 2002) ...................................................................7

*Jones v. Federated Financial Reserved Corp.*,
  144 F. 3d 961 (6th Cir. 1998) ....................................................................15

*Jones v. U.S. Child Support Recovery*,
  961 F. Supp. 1518 (D. Utah 1997).............................................................7, 8

*Kee v. Fifth Third Bank*,
  No. 2:06-cv-00602, 2009 WL 735048 (D. Utah Mar. 18, 2009)...........................23

*Kee v. RG Crown Bank*,
  656 F. Supp. 2d 1348 (D. Utah 2009).........................................................12

*Kilpatrick v. Wiley, Rein & Fielding*,
  37 P.3d 1130 (Utah 2001)..........................................................................18

*Kvassay v. Hasty*,
  236 F. Supp. 2d 1240 (D. Kans. 2002) .......................................................13

*Lake Carriers' Ass'n v. MacMullan*,
  406 U.S. 498 (1972)....................................................................................5

*Lal v. American Home Servicing, Inc.*,
  680 F. Supp. 2d 1218 (E.D. Cal. 2010)........................................................23

*Llewellyn v. Allstate Home Loans, Inc.*,
  795 F.Supp. 2d 1210 (D.Colo. 2011)............................................................12

*Longman v. Wachovia Bank, N.A.*,
  702 F.3d 148 (2nd Cir. 2012)......................................................................16

*Mansour v. Cal-Western Reconveyance Corp.*,
  618 F. Supp. 2d 1178 (D. Ariz. 2009) .........................................................11

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
  87 A.D.3d 287, 928 N.Y.S.2d 229 (2011)..................................................9, 10

*McCarthy v. Lewis*,
  615 P.2d 1256 (Utah 1980).........................................................................20

*Metcalf v. Metro. Life Inc.*,
  961 F. Supp. 1536 (D. Utah 1997).......................................................................7

*Mitchell v. First Nat. Bank of Dozier*,
  505 F.Supp. 176 (M.D.Ala. 1981) ......................................................................15

*Munk v. Fed. Land Bank of Wichita*,
  791 F.2d 130 (10th Cir. 1986) ............................................................................12

*Murphy Oil USA Inc. v. Wood*,
  438 F.3d 1008 (10th Cir. 2006) ............................................................................6

*Murray v. City of Sapulpa*,
  45 F.3d 1417 (10th Cir. 1995) ............................................................................23

*Nelson v. Chase Manhattan Mortgage Corp.*,
  282 F.3d 1057 (9th Cir. 2002) ....................................................................15, 16

*Nool v. HomeQ Servicing*,
  653 F. Supp. 2d 1047 (E.D. Cal. 2009)...............................................................11

*Nwoke v. Countrywide Home Loans, Inc.*,
  251 Fed. Appx. 363, 2007 WL 3037118 (7th Cir. 2007).......................................12

*Oman v. Davis Sch. Dist.*,
  194 P.3d 956 (Utah 2008).....................................................................................7

*Osmond v. Litton Loan Servicing, LLC*,
  No. 1:10-cv-11, 2011 WL 1988403 (D. Utah May 20, 2011) .................................8

*Perry v. Stewart Title Co.*,
  756 F.2d 1197 (5th Cir. 1985) ............................................................................11

*Pinson v. Equifax Credit Information Servs., Inc.*,
  316 Fed. Appx. 744 (10th Cir. 2009)..............................................................16, 17

*Prince v. Bear River Mut. Ins. Co.*,
  56 P.3d 524 (Utah 2002).......................................................................................7

*Resolution Trust Corp. v. Fed. Sav. & Loan Ins. Corp.*,
  25 F.3d 1493 (10th Cir. 1994) ..............................................................................6

*Reynolds v. Woodall*,
  285 P.3d 7 (Utah Ct. App. 2012) ........................................................................20

*Richards v. Brown*,
    222 P.3d 69 (Utah Ct. App. 2009) ......................................................................3

*RJW Media, Inc. v. CIT Group/Consumer Finance, Inc.*,
    202 P.3d 291 (Utah Ct. App. 2008) ...................................................................20

*Rocky Mountain Energy v. Utah State Tax Comm'n*,
    852 P.2d 284 (Utah 1993) .................................................................................19

*Rodeback v. Utah Fin.*,
    No. 1:09-cv-00134-TS, 2010 WL 2757243 (D. Utah Jul. 13, 2010) .....................22

*Ross v. Washington Mut. Bank*,
    566 F. Supp. 2d 468 (E.D.N.C. 2008) ...............................................................17

*Rush v. Macy's New York, Inc.*,
    775 F.2d 1554 (11th Cir. 1985) ........................................................................15

*Russell v. Thomas*,
    999 P.2d 1244 (Utah 2000) ...............................................................................19

*Russell v. Thomson Newspapers, Inc.*,
    842 P.2d 896 (Utah 1992) ...................................................................................6

*Sanders v. Ethington*,
    No. 2:10-cv-183, 2010 WL 5252843 (D.Utah Dec. 16, 2010) .............................15

*Sanders v. Mtn. Am. Fed. Credit Union*,
    689 F.3d 1138 (10th Cir. 2012) ........................................................................16

*Saunders v. Branch Banking & Trust Co. of Va.*,
    526 F.3d 142 (4th Cir. 2008) ...........................................................................16

*Sawyers v. FMA Leasing Co.*,
    722 P.2d 773 (Utah 1986) ...................................................................................2

*Schlosser v. Fairbanks Capital Corp.*,
    323 F.3d 534 (7th Cir. 2003) ...........................................................................12

*SimmsParris v. Countrywide Fin. Corp.*,
    652 F.3d 355 (3d Cir. 2011) .............................................................................16

*Smith v. Grand Canyon Expeditions Co.*,
    84 P.3d 1154 (Utah 2003) .................................................................................18

*Sohm v. Dixie Eye Ctr.*,
   166 P.3d 614 (Utah Ct. App. 2007) ............................................................................1

*Solomon v. HSBC Mortg. Corp.*,
   395 Fed. Appx. 494 (10th Cir. 2010) (unpublished)...............................................11

*Stevens–Henager College v. Eagle Gate College, Provo College, Jana Miller*,
   248 P.3d 1025 (Utah Ct. App. 2011) ....................................................................1, 3

*Thayne v. Taylor, Bean & Whitaker Mortg. Corp.*,
   No. 1:09–cv–141, 2010 WL 3546929 (D. Utah Sept. 10, 2010) ...........................23

*Thomas v. Metropolitan Life Ins. Co.*,
   631 F.3d 1153 (10th Cir. 2011) ............................................................................23

*Tilley v. Global Payments, Inc.*,
   603 F. Supp. 2d 1314 (D. Kan. 2009) ..................................................................17

*Toone v. Wells Fargo Bank, N.A.*,
   No. 2:11–cv–170, 2011 WL 4499299 (D. Utah Sept. 27, 2011) ...........................22

*Tripoli v. Branch Banking & Trust Corp.*,
   No. 2:12-cv-125-DN, 2012 WL 2685090 (D. Utah Jul. 6, 2012).....................22, 23

*TruGreen Companies, L.L.C. v. Mower Brothers, Inc.*,
   199 P.3d 929 (Utah 2008).....................................................................................18

*Vazquez–Garcia v. Trans Union De Puerto Rico*,
   222 F.Supp.2d 150 (D.Puerto Rico 2002).............................................................15

*White v. Blackburn*,
   787 P.2d 1315 (Utah Ct. App. 1990) ......................................................................7

*Yagman v. JP Morgan Chase Bank, N.A.*,
   2012 WL 999835 (C.D. Cal. 2012)........................................................................13

*Yutesler v. Sears Roebuck & Co.*,
   263 F.Supp.2d 1209 (D.Minn. 2003).....................................................................15

*Zsamba ex rel. Zsamba v. Cmty. Bank, Abilene, Kan.*,
   63 F. Supp. 2d 1294 (D. Kan. 1999).....................................................................11

### STATUTES

12 U.S.C. § 2605 .................................................................................................... 23

15 U.S.C. 1692d .................................................................................................... 17

15 U.S.C. 1692e .................................................................................................... 17

15 U.S.C. 1692f .................................................................................................... 17

15 U.S.C. 1692k .................................................................................................... 17

15 U.S.C. 1692k(c) ............................................................................................... 14

15 U.S.C. § 1681 et seq .......................................................................................... 14

15 U.S.C. §§ 1681a(d)(1) & (2)(A)(i), (f), 1681e(d)(1)(A) .................................. 15

15 U.S.C. § 1681n ............................................................................................ 15, 16

15 U.S.C. §§ 1681s-2(a), (b), (c), (d) ...................................................................... 7

15 U.S.C. §§ 1681s-2(d) ................................................................................... 15, 17

15 U.S.C. § 1681s–2 .............................................................................................. 16

15 U.S.C. §§ 1692a(3), (5), (4), (6)(F)(iii), (6)(A)-(B) .......................................... 6

15 U.S.C. § 1692a(4) ............................................................................................. 11

15 U.S.C. §§ 1692a(5), (6) ..................................................................................... 10

15 U.S.C. § 1692a(6)(A)-(B) ................................................................................. 10

15 U.S.C. § 1692a(6)(A)-(B), (F)(iii) .................................................................... 13

15 U.S.C. § 1692a(6)(F)(iii) ................................................................. 10, 11, 12, 13

15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692k ...................................................... 14

28 U.S.C. 2605(e) .................................................................................................. 21

28 U.S.C. § 2605(i)(3) ........................................................................................... 22

28 U.S.C. § 2605(e)(1)(B) ................................................................................ 21, 22

28 U.S.C. §§ 2605(e), (f)(1), (i)(3) .......................................................................... 8

28 U.S.C. § 2605(f)(1) ...................................................................................................22

UTAH CODE ANN. § 7-17-4 .............................................................................................9

UTAH CODE ANN. § 38-9-1(6)....................................................................................7, 19

UTAH CODE ANN. § 38-9-4(3)......................................................................................3, 7

UTAH CODE ANN. § 57-1-24(1)....................................................................................20

UTAH CODE ANN. § 57-9-4(1)......................................................................................19

UTAH CODE ANN. § 78B-8-201(1)(a) ...........................................................................7

**OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY at 449 (9th ed. 2004) ......................................................13

FED. R. CIV. P. 12(b)(1) ........................................................................................ passim

FED. R. CIV. P. 56(a) ...................................................................................................22

MEMORANDUM AND POINTS OF AUTHORITIES

INTRODUCTION

In her second amended complaint (**SAC**), plaintiff Deanna Hadley (**plaintiff**) asserts eight causes of action based on the same basic set of allegations: that her loan was wrongfully placed in default status after defendants Bank of America, N.A., individually and as successor by merger to BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans Servicing, L.P. (**BANA**), and Countrywide Home Loans, Inc. (**CHL**) (collectively **defendants**) improperly charged escrow fees on her account that she refused to pay.  Plaintiff has failed to produce the evidence necessary to survive summary judgment on any of her causes of action.

The undisputed facts in this case reveal that plaintiff failed to live up to her end of the bargain when she failed to provide BANA with proof of current insurance coverage on the property for over fourteen months after it was requested in May 2009.  As a result, BANA purchased two lender placed policies (**LPP**s) to protect itself as explicitly permitted under the deed of trust. After plaintiff finally did provide proof of current insurance coverage in July 2010, BANA sought a refund on both policies, and in the process mistakenly issued a check for $1,128, the cost of the LPP premium, to plaintiff.  Plaintiff cashed the $1,128 check, and as a result, her account held a negative escrow balance of $1,128, which BANA attempted to recoup over twelve months by charging her an additional $94 a month.  Plaintiff refused to pay this additional amount, resulting in her short payments being rejected from September 2011 through April 2012 and her account placed into default.  The notice of default was cancelled on June 1, 2012, and BANA has reinstated plaintiff's loan and accepted plaintiff's payments since May 2012.

Defendants are entitled to summary judgment because plaintiff has failed to produce evidence to support all of the necessary elements to support her claims.  Plaintiff responded to defendant's written discovery requests with non-specific conclusions and generalities, and the discovery requests fail to satisfy the evidentiary standard necessary to survive summary judgment.  Plaintiff ignored defendants' written request for her to supplement those responses. Plaintiff then failed to appear at her duly noticed deposition on January 25, 2013.  Discovery closed January 31, 2013.

All of plaintiff's claims fail because she has produced no evidence of compensable damages.  Even if the Court concluded that she might be entitled to statutory damages, attorney fees, or nominal damages, which she is not, defendants are still entitled to judgment as a matter of law because those claims are moot as set forth in the motion to dismiss under Fed. R. Civ. P. 12(b)(1) filed concurrently with this motion.

Plaintiff's breach of contract claim cannot survive summary judgment for multiple reasons, even if adding $94 per month to her payments to recoup the $1,128 mistakenly sent to plaintiff was a breach of BANA's obligations.  First, evidence of compensable damages is a necessary element to state a breach of contract claim and plaintiff has produced none.  Second, plaintiff was the first to breach the obligations related to insurance payments by failing to provide proof of insurance as required by the deed of trust.  Third, even if plaintiff were entitled to nominal damages or attorney fees, the claim is moot as set forth in the motion to dismiss under Fed. R. Civ. P. 12(b)(1) filed with concurrently with this motion.

Plaintiff's emotional distress claim cannot survive summary judgment because she has failed to produce evidence of either outrageous acts or injury sufficient to establish a claim for emotional distress.

Plaintiff's claim for violation of the Fair Debt Collection Practices Act (**FDCPA**) fails because, as a matter of law, defendants cannot be defined as "debt collectors" under the FDCPA given the undisputed material facts.  This remains true even if defendants incorrectly reported her loan as being in default.  Again, to the extent the Court concludes that plaintiff is entitled to statutory damages, the claim is moot as set forth in the motion to dismiss under Fed. R. Civ. P. 12(b)(1) filed with concurrently with this motion.

Plaintiff has also failed to produce evidence supporting the elements of her claim for violation of the Fair Credit Reporting Act (**FCRA**).  Plaintiff produced no evidence that she contacted credit rating agencies to request defendants' reporting be corrected or that the agencies asked defendants to investigate plaintiff's claims.  Plaintiff also has no evidence that defendants failed to properly investigate and/or correct the information furnished to credit rating agencies upon inquiry from the credit reporting agencies.  Each of these is a required element to state a claim under FCRA against defendants.

With respect to plaintiff's claim for punitive damages, plaintiff has produced no evidence to establish any triable issue on that claim.  Plaintiff acknowledges that she cannot obtain punitive damages for any breach of contract, but she has also failed to establish any tort that might otherwise support such an award, nor any malicious or fraudulent conduct by defendants.

Plaintiff's wrongful lien claim under UTAH CODE ANN. § 38-9-4(3) in her seventh cause of action cannot survive summary judgment because, under Utah law, a notice of default and

election to sell is not a lien and the notice of default has since been rescinded.  Plaintiff also failed to produce any evidence of damages, and to the extent the Court finds an award of attorney fees to be appropriate, the claim is moot as set forth in the motion to dismiss under Fed. R. Civ. P. 12(b)(1) filed with concurrently with this motion.

Nor can plaintiff state a claim for violation of the Real Estate Settlement Procedures Act (**RESPA**).  She has produced no evidence that she submitted any Qualified Written Request (**QWR**) or that she suffered any damages as result of any failure to respond to such a QWR or correct a mistake outlined in such a QWR.

Finally, plaintiff's claim for declaratory relief has been mooted by the corrective measures taken by defendants, and plaintiff is not entitled to an advisory opinion regarding possible future events between the parties.

No material facts are in dispute and defendants are entitled to judgment as a matter of law on each and every cause of action asserted in the SAC.  Summary judgment is appropriate and should be granted in favor of defendants.

<u>STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS</u>

A.    First Cause of Action: <u>Declaratory Judgment</u>.

    i.    Elements:   "[1] a substantial controversy, [2] between parties having adverse legal interests, [3] of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972).

    ii.    Material undisputed facts necessary and/or insufficient to meet those elements:

        1.    Statement of Undisputed Material Fact (**SOF**) ¶¶ 21-29.

        2.    SOF ¶¶ 21-29.

        3.    SOF ¶¶ 30-32.

B.    Second Cause of Action: <u>Breach of Contract</u>.

    i.    Elements:   "The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of contract by the other party, and (4) damages." *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).

    ii.    Material undisputed facts necessary and/or insufficient to meet those elements:

        1.    SOF ¶¶ 2-8, 27.

        2.    SOF ¶¶ 9-18, 23-32.

        3.    SOF ¶¶ 19-22.

        4.    SOF ¶¶ 33, 38-42.

C.    Third Cause of Action: <u>Intentional / Negligent Infliction of Emotional Distress</u>.

    i.    Elements:   Intentional Infliction of Emotional Distress— "(a) that the defendant intentionally engaged in some conduct toward the plaintiff

considered outrageous and intolerable in that it offends the generally accepted standards of decency and morality (b) with the purpose of inflicting emotional distress or where any reasonable person would have known that such would result, and (c) that severe emotional distress resulted as a direct result of the defendant's conduct." *Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896, 905 (Utah 1992). Negligent Infliction of Emotional Distress— "[i]f the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and (b) from facts known to him, should have realized that the distress, if it were caused, might result in illness or bodily harm." *Harnicher v. Univ. of Utah Med. Ctr.*, 962 P.2d 67, 69 (Utah 1998) (quoting RESTATEMENT (SECOND) OF TORTS § 313 (1965)).

  ii. Material undisputed facts necessary and/or insufficient to meet those elements:

    1. SOF ¶¶ 20-33, 38-42.

D. Fourth Cause of Action: <u>Violation of FDCPA</u>.

  i. Elements:  Plaintiff must establish that she is a "consumer," who is a "natural person obligated or allegedly obligated to pay any debt" that arises out of a "transaction primarily for personal, family, or household purposes" and that the effort to collect of such debt in a manner prohibited by the FDCPA is made by a "debt collector" rather than a "creditor." *See* 15 U.S.C. §§ 1692a(3), (5), (4), (6)(F)(iii), (6)(A)-(B).

  ii. Material undisputed facts necessary and/or insufficient to meet those elements:

    1. SOF ¶¶ 2-8, 20-27, 29, 34, 40-42.

E. Fifth Cause of Action: <u>Violation of FCRA</u>.

  i. Elements:  (1) Plaintiff disputed the accuracy/completeness of her credit reporting to a credit rating agency (**CRA**), (2) the CRA sent notice of the dispute to defendant, (3) defendants failed to investigate the disputed information, review all relevant information provided by the CRA, report the results of the investigation to the CRA, and failed to report the results of defendants' investigation to the national CRAs; and (4) defendants'

failure was intentional or negligent.  *See* 15 U.S.C. §§ 1681s-2(a), (b), (c), (d); 1681n; 1681o.

    ii.    Material undisputed facts necessary and/or insufficient to meet those elements:

        1.    SOF ¶¶ 33-34, 36, 40-42.

F.    Sixth Cause of Action:  <u>Punitive Damages</u>.

    i.    Elements:    "Except as otherwise provided by statute, punitive damages may be awarded only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others." UTAH CODE ANN. § 78B-8-201(1)(a).

    ii.    Material undisputed facts necessary and/or insufficient to meet those elements:  SOF ¶¶ 2-34, 40-42.

G.    Seventh Cause of Action: <u>Wrongful Lien</u>.

    i.    Elements:    "A person is liable to the record owner of real property for $10,000 or for treble actual damages, whichever is greater, and for reasonable attorney fees and costs, who records or causes to be recorded a wrongful lien as defined in Section 38-9-1 in the office of the county recorder against the real property, knowing or having reason to know that the document: (a) is a wrongful lien; (b) is groundless; or (c) contains a material misstatement or false claim." UTAH CODE ANN. § 38-9-4(3). Section 38-9-1 defines a wrongful lien as "any document that purports to create a lien, notice of interest, or encumbrance on an owner's interest in certain real property and at the time it is recorded is not: (a) expressly authorized by this chapter or another state or federal statute; (b) authorized by or contained in an order or judgment of a court of competent jurisdiction in the state; or (c) signed by or authorized pursuant to a document signed by the owner of the real property." UTAH CODE ANN. § 38-9-1(6)

ii.   Material undisputed facts necessary and/or insufficient to meet those elements:  SOF ¶¶ 2-22, 26-34, 38-42.

H.   Eighth Cause of Action: <u>Violation of RESPA</u>.

i.   Elements:  Plaintiff must prove that (1) she sent a "qualified written request" (**QWR**), (2) defendant failed to timely respond to a QWR plaintiff sent or that defendant failed to timely make the correction to the "servicing" of plaintiff's loan that she requested in a QWR, and (3) plaintiff suffered "actual damages . . . as a result of the failure."  *See* 28 U.S.C. §§ 2605(e), (f)(1), (i)(3).

ii.   Material undisputed facts necessary and/or insufficient to meet those elements:  SOF ¶¶ 2-25, 34-35, 42.

## Statement of Undisputed Material Facts

1.   Plaintiff obtained an interest in certain real property commonly known as 4152 South Colt Haven Circle in Sandy, Utah (the **property**) via a warranty deed that was recorded on May 11, 2005.  (**Warranty Deed**, **Ex. A** hereto).

2.   Two years later, on May 10, 2007, plaintiff obtained a $312,000 loan from Gateway Business Bank d/b/a Lender's Direct (**lender**) to refinance the property, which was evidenced by a promissory note (**note**, **Ex. B** hereto) and secured by a deed of trust (**deed of trust**, **Ex. C** hereto) naming Mortgage Electronic Registration System, Inc. (**MERS**) as the beneficiary and Chicago Title Insurance Company (**Chicago Title**) as the trustee.

3.   Section 3 of the deed of trust, entitled "Funds for Escrow Items," states in the relevant part that:

> Lender may waive borrower's obligation to pay lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  **In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make**

> **such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.**  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15, and upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

(Ex. C at § 3 (emphasis added)).  Section 15 of the deed of trust, entitled "Notices," provides that notices must be made in writing and are deemed to have occurred "when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means."  (*Id.* at § 15).

4.     On May 10, 2007, plaintiff and lender entered into two separate contracts, entitled "Reserve Account Notice" (**RAN**, SAC, Ex. A, **Ex. D** hereto) and "Multi-State Impound Account Agreement" (**MSIAA**, SAC, Ex. B, **Ex. E** hereto) respectively.  Pursuant to the requirements of Utah Code Ann. § 7-17-4, in the RAN and MSIAA, the parties agreed that plaintiff would be responsible for paying property taxes and maintaining adequate insurance on the property.  (*Id.*).

5.     Pursuant to Section 20 of the deed of trust, lender informed plaintiff on or about September 1, 2007 that CHL would now be servicing plaintiff's loan through Countrywide Home Loans Servicing, L.P. (**CHLS**). (**Servicer Notice**, SAC, Ex. C, **Ex. F** hereto).[1]

---

[1] "Countrywide Home Loans, Inc. . . . originates residential home mortgage loans and, together with defendant Countrywide Home Loans Servicing LP . . . , services those loans."  *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 87 A.D.3d 287, 298, 928 N.Y.S.2d 229 (2011).

6.      On June 1, 2008, BANA's parent company Bank of America Corporation purchased all of the outstanding stock of Countrywide Financial Corporation, the parent company of CHL and CHLS, on June 1, 2008.  (**Ex. G** hereto, Declaration of Lisa Millhouse in support of defendants' summary judgment motion (**Millhouse Decl.**), ¶ 10; and **Press Release**, **Ex. H** hereto).[2]

7.      Effective April 27, 2009, CHLS changed its name to BAC Home Loans Servicing, LP (**BAC**).  (Ex. G, Millhouse Decl. at ¶ 11, and **Certificate of Filing**, **Ex. I** hereto).

8.      BAC merged into its parent BANA on July 1, 2011.  (Ex. G, Millhouse Decl. at ¶ 12, and **Certificate of Merger, Ex. J** hereto).

9.      BAC sent plaintiff a letter dated May 19, 2009 by first class mail stating that BAC needed proof of current insurance by July 7, 2009 or BAC would purchase a lender placed policy for the property to protect its security.  (Ex. G, Millhouse Decl. at ¶ 13, and **Ex. 1** thereto (**May 19, 2009 letter**)).

10.     Plaintiff did not provide proof of insurance to BAC on or before July 7, 2009.  (Ex. G, Millhouse Decl. at ¶ 14).

11.     BAC sent plaintiff a letter dated July 10, 2009 by first class mail indicating that it had not received proof of insurance coverage and had therefore purchased policy number M3671399, at a cost of $1,128.  (Ex. G, Millhouse Decl. at ¶ 15, and **Ex. 2** thereto (**July 10, 2009 letter**)).

---

[2]  "Countrywide Home [Loans, Inc.], Countrywide [Home Loans] Servicing[, LP] and Countrywide Securities [Corporation] are all wholly-owned subsidiaries of Countrywide Financial [Corporation].  After the events set forth in the amended complaint, . . . Bank of America [Corporation] merged with Countrywide Financial [Corporation] and acquired these subsidiaries."  *MBIA Ins. Corp.*, 87 A.D.3d at 298 n1.

12.     BAC sent plaintiff a letter dated April 5, 2010 by first class mail indicating that BAC still had not received proof of insurance coverage, and therefore would renew the policy if proof was not provided within 30 days.  (Ex. G, Millhouse Decl. at ¶ 16, and **Ex. 3** thereto (**April 5, 2010 letter**)).

13.     Plaintiff did not provide proof of current insurance to BAC within 30 days of the April 5, 2010 letter.  (Ex. G, Millhouse Decl. at ¶ 17).

14.     BAC sent plaintiff a letter dated May 9, 2010 by first class mail indicating that BAC had purchased another policy, number M4418163, because plaintiff had not responded to its request for proof of insurance coverage in the April 5, 2010 letter.  (Ex. G, Millhouse Decl. at ¶ 18, and **Ex. 4** thereto (**May 9, 2010 letter**)).

15.     BAC also sent plaintiff a letter dated May 9, 2010 offering plaintiff the opportunity to reduce the lender placed hazard insurance coverage amount to the outstanding principal balance of her loan.  (Ex. G, Millhouse Decl. at ¶ 19, and **Ex. 5** thereto (**May 9, 2010 coverage reduction offer**)).

16.     On or about July 13, 2010, fourteen months after insurance information has been initially requested, Plaintiff finally provided BAC with proof of insurance through May 5, 2011.  (Ex. G, Millhouse Decl. at ¶ 20, and **Ex. 6** thereto (**July 13, 2010 fax**)).

17.     BAC sent plaintiff a letter dated July 15, 2010 informing plaintiff that BAC would be refunding her account with respect to policy M4418163.  (Ex. G, Millhouse Decl. at ¶ 21, and **Ex. 7** thereto (**July 15, 2010 letter**)).

18.     BAC sent plaintiff a letter dated May 11, 2011 informing her that policy M3671399 had been cancelled with no charge to her.  (Ex. G, Millhouse Decl. at ¶ 22, and **Ex. 8** thereto (**May 11, 2011 letter**)).

19.     About a week after notifying her of the intent to cancel policy M3671399, on May 19, 2011, BAC mistakenly sent plaintiff check No. 0005648758 for $1,128, payable to plaintiff, which was cashed.  (Ex. G, Millhouse Decl. at ¶ 23, and **Ex. 9** thereto (**$1,128 check**)).

20.     On June 9, 2011, an escrow analysis was performed on plaintiff's account.  (Ex. G, Millhouse Decl., ¶ 24).   The analysis indicated that plaintiff's escrow account had a deficiency in the amount of -$1,128, as a result of the $1,128 check that had been mistakenly sent to plaintiff.  (*Id.*).   In order to recoup the deficiency, the escrow department divided the -$1,128 by twelve months ($94/month) and added a $94 charge to plaintiff's monthly loan payment.  (*Id.*).

21.     BANA rejected plaintiff's September 2011 loan payment in the amount of $1870.60 because the payment was less than the full amount stated as due and owing.  (Ex. G, Millhouse Decl., ¶ 25).

22.     BANA subsequently rejected plaintiff's payments for September, October, November and December, 2011.  (Ex. G, Millhouse Decl., ¶ 26).  BANA mailed four checks to plaintiff, returning plaintiff's September – December 2011 monthly payments of $1,870.60 on or about September, 28, 2011 (check number 638289), October 31, 2011 (check number 785888), and November 28, 2011 (check number 901986), and January 4, 2012 (check number 1042588). (*Id.*).

23.     These September – December 2011 checks to plaintiff were not cashed.  (Ex. G, Millhouse Decl., ¶ 27).  On January 27, 2012, plaintiff called BANA and told the representative that she had not received the checks.  (*Id.*).

24.     As a result of the January 27, 2012 conversation, BANA issued stop payment orders on the four previously sent checks and reissued check number 1042588 as check number 1192092, check number 785888 as check number 119293, and check number 638289 as check number 119296 on or about February 10, 2012. (Ex. G, Millhouse Decl., ¶ 28, and **Ex. 11** thereto).

25.     On March 29, 2012, plaintiff sent a fax to BANA indicating that she had received three of the four reissued checks, and also acknowledging that she may have discarded the previously issued checks because she thought they were junk mail. (Ex. G, Millhouse Decl., ¶ 29, and **Ex. 12** thereto (**March 29, 2012 fax**)).

26.     Plaintiff's attempted payments of $1870.60 from January 2012 through April 2012 were electronically rejected by BANA.  (Ex. G, Millhouse Decl., ¶ 30).

27.     On December 7, 2011, MERS recorded an assignment transferring all beneficial interests in the deed of trust to BANA.  (**Assignment**, **Ex. K** hereto).

28.     On February 27, 2012, BANA appointed James H. Woodall as trustee under the trust deed.  (**Substitution of trustee**, **Ex. L** hereto).

29.     On March 7, 2012, Woodall recorded a notice of default and election to sell. (**Notice of default**, **Ex. M** hereto).

30.     Since May 2012, BANA has resumed accepting plaintiff's monthly payments of $1,870.60.  (Ex. G, Millhouse Decl., ¶ 31).

31.    Since May 2012, BANA has waived escrow fees and any late fees from plaintiff's account.  (Ex. G, Millhouse Decl., ¶ 32, and **Ex. 13** thereto (**Reinstatement calculation**)).[3]

32.    On June 1, 2012, the trustee recorded a "Notice of Rescission of Notice of Default and Election to Sell Under Trust Deed."  (**Rescission of notice of default**, **Ex. N** hereto).

33.    On October 26, 2012, defendants propounded written discovery on plaintiff.  On or about November 28, 2012, plaintiff served defendants with her objections and responses to defendants' discovery requests. (**Plaintiff's discovery responses, Ex. O hereto**).

34.    In the interrogatories addressing her alleged damages and contentions, plaintiff stated as follows:

Interrogatory No. 1:  Please describe in detail how You computed damages of $150,000, for the alleged breach of contract You claim in Your Initial Disclosures, or any other amount You now claim as breach of contract damages, including but not limited to identifying all documents related to this calculation, identifying all Persons that in any way assisted You with making this calculation (other than your attorney), identifying all witnesses who will or may testify in support of Your claim and identifying and describing in detail all facts and methodology You used in this calculation or which You will use to support Your claim.

Answer No. 1:  Plaintiff objects to Interrogatory No. 1 on the basis that it is a multiple compound question, containing multiple questions within questions, is vague, ambiguous, oppressive, overly broad, and unduly burdensome. **Evaluation of total damages are**

---

[3]  The January 29, 2013 reinstatement calculation reflects 9 payments due and owing, rather than 8, because it includes the payment due in February 2013 that had not been made as of January 29, but which was made on February 5, 2013.

**ongoing and the rough estimate of $150,000 fails to include ongoing damages. Discovery is ongoing,** Plaintiff reserves the right to augment this response and Plaintiff will provide copies of documents relating to calculation of the damages, and identifying witnesses who may testify, upon completion of further discovery. (Emphasis added).

<u>Interrogatory No. 2</u>:  Please describe in detail how You computed damages of $25,000 for the alleged violation of the Fair Credit Reporting Act (FCRA), You claim in Your Initial Disclosures, or any other amount You now claim as FCRA damages and/or related to credit reporting, including but not limited to identifying all documents related to this calculation, identifying all Persons that in any way assisted You with making this calculation (other than your attorney), identifying all witnesses who will or may testify in support of Your claim, and identifying and describing in detail all facts and methodology You used in this calculation or which You will use to support Your claim.

<u>Answer No. 2</u>: Plaintiff objects to Interrogatory No. 2 on the basis that it is vague, ambiguous, oppressive, overly broad, and unduly burdensome. Notwithstanding said objections, **Plaintiff would state that damage calculations are based upon protection of consumers**. "aimed at protecting consumers from inaccurate information in consumer reports and at the establishment of credit reporting procedures that utilize correct, relevant and up-todate information in a confidential and responsible manner." – *Jones v. Federated Financial Reserve Corp.*, 144 F.3d 961 (6th Cir. 1998). **Moreover, Plaintiff based damages on actual and statutory damages, as allowed in the Fair Credit Reporting Act. Discovery is ongoing,** Plaintiff reserves that right to augment this response and Plaintiff will provide copies of documents related to the damages, credit

reporting violations, and identify witnesses who may testify, upon completion of further discovery. (Emphasis added).

Interrogatory No. 3: Please describe in detail how You computed damages of $50,000 for the alleged intentional infliction of emotional distress You claim in Your Initial Disclosures, or any other amount You now claim for emotional distress, including but not limited to identifying all documents related to this calculation, identifying all Persons that in any way assisted You with making this calculation (other than your attorney), identifying all witnesses who will or may testify in support of Your claim, and identifying and describing in detail all facts and methodology You used in this calculation on which You will use to support Your claim.

Answer No. 3: Plaintiff objects to Interrogatory No. 3 on the basis that it is vague, ambiguous, oppressive, overly broad, and unduly burdensome. Notwithstanding said objections, **Plaintiff would state that damage calculations are based upon projected losses, loss of standing in the community, emotional stress, humiliation, and embarrassment of having my boss, friends and associates think that I was in financial difficulty and that my home was being foreclosed upon.** Plaintiff has not decided which individuals she may call at this point in time, however, once that decision is made, Plaintiff will supplement her responses. (Emphasis added).

Interrogatory No. 5: Please describe in detail any damages you allege to have suffered and/or are entitled to under the Fair Debt Collection Practices Act, including but not limited to identifying all documents related to this calculation, identifying all Persons that in any way assisted You with making this calculation (other than your attorney), identifying all

witnesses who will or may testify in support of Your claim, and identifying and describing in detail all facts and methodology You used in this calculation on which You will use to support Your claim.

<u>Answer No. 5</u>: Plaintiff objects to Interrogatory No. 5 on the basis that it is vague, ambiguous, oppressive, overly broad, and unduly burdensome. **Notwithstanding said objections, plaintiff would state that it is premature as discovery is ongoing.** Further objection is made to the extent that it seeks discovery on matters protected by the attorney client privilege and/or work product privileges and/or seeks confidential or proprietary information. **Under the FDCPA, Plaintiff alleges, inter alia, that damages are provided for damages for debt collector harassment or abuse (15 USC 1692d); damages associated with false or misleading representations made by BANA representatives (15 USC 1692e); unfair debt collection activities and practices (15 USC 1692f); and civil liability under 15 USC 1692k, including costs and attorney fees. No specific individuals have been identified to testify at this point, but when said designation is made it will be updated.** (Emphasis added).

<u>Interrogatory No. 6</u>: Identify all Persons (sic) who actually know that the Notice of Default had been recorded, and describe the manner in which they obtained that knowledge, and the manner in which you were informed of that knowledge.

<u>Answer No. 6</u>: Plaintiff objects to Interrogatory No. 6 on the basis that it is vague, ambiguous, oppressive, overly broad, calls for speculation, and is unduly burdensome. Notwithstanding said objections Plaintiff would assert that it is impossible for her to know **all** persons who actually know that the Notice of Default had been recorded, or

how they obtained that knowledge. **Plaintiff would represent that those individuals working in the Salt Lake County Recorder's office would have firsthand knowledge of the recording, along with the attorney for BANA James Woodall, and members of his staff. Discovery is ongoing and it is premature to respond more fully to this request.** (Emphasis added).

Interrogatory No. 7: Identify all Persons who You may or will call to testify in this case regarding their knowledge of Your reputation as a real estate agent in Cache, Davis, Rich, Salt Lake, Summit, Tooele, Utah, Wasatch, and/or Weber Counties (a) before the recordation of the Notice of Default (b) after the recordation of the Notice of Default and (c) after the recordation of the Rescission.

Answer No. 7: **Discovery is still ongoing and Plaintiff has not determined who will be called as witnesses at this point. When the decision is made as to who will be called Plaintiff will supplement her responses, notwithstanding the foregoing, witnesses's [sic] include, but not limited to: Jason Hawkins, Agents from Keller Williams, Aaron Marshall, Brian Pitcher, family members.** (Emphasis added).

Interrogatory No. 9: If you contend you suffered emotional distress as a result of any action by any defendant in relation to the matters at issue in this case, please state and describe each fact upon which you rely in support of your contention, identify each document upon which you believe supports your contention.

Answer No. 9: Plaintiff objects to the compound nature of the question, and contends that Plaintiff continues to suffer emotional distress. Every time I see anything in the mail from BANA, there is a knot in my stomach. I have suffered emotional distress from the time I

first learned of problems with my account. I suffered emotion distress trying to talk to BANA representatives on over 25 separate occasions, not including the times I was kicked off the line after holding for over 30 minutes. I have suffered emotional distress when I explained everything to BANA representatives and they basically accused me of being a liar and accused me of trying to get out of paying something that I was obligated to pay. I suffered anxiety and emotional distress when I received 5 copies of a notice of default and foreclosure proceedings. I continue to have nightmares about BANA taking my house from me and being homeless. I have discussed my anxiety and emotional distress with family members and close friends. I sustained emotional distress upon receiving the notices of inter to accelerate, including, but not limited to, the ones dated June 16, 2010 (BANA doc. p000028), July 19, 2010 (BANA p 000033), August 16, 2010 (BANA p000037), September 16, 2010 (BANA p000041), November 16, 2010 (BANA p000045), April 18, 2011 (BANA p000049). I suffered anxiety and emotional distress when I observed or had neighbors tell me that someone was taking pictures of my house.

Interrogatory No. 10: Describe all Communications between you and any credit reporting agency regarding any matter related to this litigation, and identify the date of any such Communications, the manner of any such Communications, and the person with whom You so Communicated.

Answer No. 10: Plaintiff object to Interrogatory No. 10 on the basis that it is overly broad, oppressive, unduly burdensome, vague, ambiguous and requires speculation with respect to the term "communications," and with respect to the term "credit reporting agency." Notwithstanding said objections, Plaintiff contends that she spoke with Vinay Puri, Riyaz

Hussaini, Larry Devassy, Mallory Tate, Andre Knox, Roshanlal Gupta, Kevin Taylor, Sneha Dhanpalwar, Biju Francis, Joshua Rathod, Samuel Rajesh, Michael Thorpe, Brittany Adams, Heather Hoffman, Diana Arbelaez, Erin Williams, Christopher Peel, Brandon Palmer, Lucinda Lewis, Glen Bowes, Chuck Robinson, Amberly Poole, Jonston Maisiba, Salina Brooks, Kristen Lopez, Rachel Lester, Arun Mahadevan, Cynthia Harris, Richardson Laddarius, Dennis Blockaire, Salina Brooks, Jercara Rutledge, Amanda Annas, Erin in Home Retention, Gloria in escrow, Chuck employee number F8938; **representatives of Experian, and TransUnion**, QWR, including but not limited to March 29, 2012 (BANA p.000068), evidence of QWR noted in October 6, 2010 communication (BANA p.000275). (Emphasis added).

Interrogatory No. 11: If you contend that the alleged breach(es) of contract(s) or other legal violation You (sic) allege were intentional, please describe in detail each fact upon which you reply in support of your contention, identify each document upon which you believe supports your contention and identify each Person (sic) who you believe has knowledge of any facts supporting your contention.

Answer No. 11: Plaintiff objects to Interrogatory No. 11 on the basis that it is vague, ambiguous, oppressive, overly broad, calls for speculation, and is unduly burdensome. **Discovery is ongoing and Plaintiff anticipates acquiring the specific names of individuals involved during discovery and will update her responses upon receipt of complete discovery responses from BANA.** (Emphasis added).

35.     The only Qualified Written Request (**QWR**) under the Real Estate Settlement and Procedures Act (**RESPA**) identified by plaintiff in her discovery responses is the March 29, 2012

fax attached as exhibit 12 to the Millhouse Declaration submitted with this motion.  *See* Ex. O, response to Request for Production No. 5, pp. 9-10.

36.     Plaintiff refused to provide any documents related to any communications between plaintiff and any credit reporting agencies, or to identify any such communications.  *See* Ex. O, response to Request for Production No. 8, p. 10; answer to Interrogatory No. 10, p. 8.

37.     On December 4, 2012, this Court entered a minute entry regarding the motion hearing heard on November 13, 2012.  (Docket No. 38).  The Court granted plaintiff's motion for leave to file the proposed second amended complaint and set a discovery schedule requiring all discovery to be completed by January 31, 2013, and post-discovery motions to be filed no later than February 15, 2013.  (*Id.*).  The Court ordered plaintiff's counsel to prepare to prepare an order on defendants' motion to dismiss and a stipulated scheduling order.  (*Id.*).

38.     On December 17, 2012, defendants' counsel sent a letter to plaintiff's counsel outlining some of the deficiencies in plaintiff's discovery responses and requesting that plaintiff's counsel supplement her responses on or before December 30, 2012.  (**December 17, 2012 letter**, **Ex. P** hereto).  Plaintiff's counsel did not respond.

39.     On December 19, 2012, defendants' counsel sent an email to plaintiff's counsel asking about the status of the scheduling order and order on defendants' motion to dismiss, requesting dates for plaintiff's deposition, and asking for contact information for the people identified in plaintiff's discovery responses as having relevant information.  Plaintiff's counsel did not respond.  (**December 19, 2012 email**, **Ex. Q** hereto).

40.     On or about January 2, 2013, defendants' counsel sent a letter to plaintiff's counsel by regular mail and email enclosing a notice of deposition for January 25, 2013.

(**January 2, 2013 letter**, **Ex. R** hereto).  In the January 2, 2013 letter, defendants' counsel stated "I have also enclosed a notice of deposition of Deanna Hadley for January 25, 2013.  I am happy to work with you to schedule a more convenient date if this date and time does not work for you and your client."  (January 2, 2013 letter at 1).  The January 2, 2013 letter again asked about (a) the status of the scheduling order, (b) the order on defendants' motion to dismiss, (c) the deficiencies in plaintiff's discovery requests set forth in the December 17, 2012 letter, (d) contact information for any third-party witnesses plaintiff intended to call at trial, and (e) the need for plaintiff to identify topics for any BANA 30(b)(6) witness that plaintiff desired to be scheduled for deposition.  (*Id.*).  Plaintiff's counsel did not respond.

41.    Plaintiff did not attend her deposition scheduled for January 25, 2013. (**Deposition Transcript**, Ex. S hereto). Plaintiff's counsel called defendants' counsel on the morning of the deposition, indicating that he had been busy with other matters and had not been aware of defendants' deposition notice.

42.    Plaintiff has not supplemented her November 28, 2012 discovery responses, provided contact information for any witnesses, or otherwise produced any evidence other than her responses to defendants' written discovery.

## LEGAL STANDARD

Summary judgment must be granted when there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(a). "Summary Judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 327 (1986) (citations omitted).  *Accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The court must make its determination drawing all reasonable inferences in the light most favorable to the nonmoving party.  *See Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).  A dispute is "genuine" if the evidence might lead a reasonable jury to return a verdict for the nonmoving party.  *See Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

"However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics v. First Affiliated Securities*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324).  "To survive summary judgment, 'non-movant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'"  *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991)).  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

If the moving party does not bear the ultimate burden of persuasion at trial, "it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the non-movant on an essential element of the nonmovant's claims.'" *Cassara v. DAC Services, Inc.,* 276 F.3d 1210, 1213 (10th Cir. 2002) (citing *Adler*, 144 F.3d at 671). This is because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See also Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 325.

Not every disputed factual issue renders summary judgment inappropriate and "the mere existence of some alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson*, 477 U.S. at 248). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.*

When evaluating a summary judgment motion, a trial just must consider each element of the claim at issue under the appropriate standard of proof. *See Celotex*, 477 U.S. 322; *Anderson*, 477 U.S. at 254. *Accord Applied Genetics*, 912 F.2d at 1243.

<u>ARGUMENT</u>

I.   **PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS BECAUSE PLAINTIFF CANNOT ESTABLISH SHE SUFFERED ANY COMPENSABLE DAMAGES AS A RESULT OF ANY BREACH AND THE NOTICE OF DEFAULT RESULTED FROM PLAINTIFF'S PRIOR BREACH.**

Plaintiff's breach of contract claim fails for several reasons.  First, despite being given multiple opportunities to present evidence of compensable damages before the close of discovery, plaintiff failed to do so.  Second, the notice of default resulted from plaintiff's breach of her own obligation to provide proof of insurance.  Third, to the extent plaintiff is entitled to any damages or attorney fees, her claim is moot for the reasons set forth in the motion to dismiss under Fed. R. Civ. P. 12(b)(1) filed concurrently with this motion.

**A.     Plaintiff Cannot Establish that She Suffered Actual Damages.**

"A plaintiff's failure to present evidence that, if believed by the trier of fact, would establish any one of the [elements] of the prima facie case justifies a grant of summary judgment to the defendant."  *Sohm v. Dixie Eye Ctr.,* 166 P.3d 614, 619 (Utah Ct. App. 2007) (internal quotation marks omitted).  Under Utah law, "[a] breach of contract claim requires four essential elements of proof, one of which is damages."  *Eleopulos v. McFarland and Hullinger, LLC*, 145 P.3d 1157, 1159 (Utah Ct. App. 2006).  At the summary judgment stage, "[a] plaintiff is required to prove both the fact of damages and the amount of damages" by a preponderance of the evidence.  *Stevens–Henager College v. Eagle Gate College, Provo College, Jana Miller*, 248 P.3d 1025, 1030 (Utah Ct. App. 2011).

"According to Utah contract law, . . . damages are properly measured by the amount necessary to 'place the non-breaching party in as good a position as if the contract had been

performed.'" *Alta Health Strategies, Inc. v. CCI Mech. Serv.*, 930 P.2d 280, 284-85 (Utah Ct. App. 1990) (quoting *Anesthesiologists Assocs. v. St. Benedict's Hosp.*, 884 P.2d 1236, 1238 (Utah 1994)). "Damages recoverable for breach of contract include both general damages, *i.e.,* those flowing naturally from the breach, and consequential damages, *i.e.,* those reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made." *Beck v. Farmers Ins. Exchange*, 701 P.2d 795, 801 (Utah 1985). "The foreseeability of any such damages will always hinge upon the nature and language of the contract and the reasonable expectations of the parties." *Id.* at 802.

"While the standard for determining the amount of damages is not so exacting as the standard for proving the fact of damages, there still must be evidence that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages." *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.,* 709 P.2d 330, 336 (Utah 1985). "Plaintiff, of course, has the burden to produce a sufficient evidentiary basis to establish the fact of damages and to permit the trier of fact to determine with reasonable certainty the amount" of damages suffered. *Sawyers v. FMA Leasing Co.*, 722 P.2d 773, 774 (Utah 1986).

Here, plaintiff has failed to establish any compensable damages for breach of contract. In her complaint, she alleges that "she has suffered damages, to be proven more fully at the time of trial." SAC, ¶ 93. In her answers to interrogatories, plaintiff contended only that "evaluation of total damages are ongoing and the rough estimate of $150,000 fails to include ongoing damages." SOF ¶ 34, Ex. O, p. 3. Plaintiff failed to either appear at her deposition or supplement her deficient discovery responses. SOF ¶ 40-42.

In *Castillo v. Atlanta Cas. Co.*, 939 P.2d 1204 (Utah Ct. App. 1997), the Utah Court of Appeals concluded that while damages had occurred and were of the kind contemplated by the parties, there was no certainty as to the amount of the loss sustained.  *Id.* at 1212.  "Plaintiffs proved *at most* only half of the necessary equation.  They proved that $23 per day is the reasonable rental value of a replacement vehicle.  However, they failed to show on how many days, out of the total 330 day period, they had use for such a car." *Id.*  The Utah Court of Appeals affirmed the trial court's ruling that plaintiffs were not entitled to consequential damages as a matter of law.  *Id.*

In *Stevens–Henager College v. Eagle Gate College, Provo College, Jana Miller*, 248 P.3d 1025 (Utah Ct. App. 2011), "[t]he testimony of the Executives merely suggested ways in which Stevens–Henager might have been damaged and then provided unsupported opinions about the range of those hypothetical damages." *Id.* at 1035.  Merely reiterating the categories of damages identified in the complaint and the initial disclosures is insufficient to survive a motion for summary judgment.  *Id.* "There is simply no evidence from which the jury could determine whether and in what amount Stevens-Henager was damaged." *Id.* at 1034.

Plaintiff's evidence in this case is no different than the "unsupported opinions about the range of hypothetical damages" that was insufficient in *Stevens-Henager*.  There is no method by which a jury or defendants could calculate any harm to plaintiff.  *See Richards v. Brown*, 222 P.3d 69, 83 (Utah Ct. App. 2009) ("'In order to be entitled to . . . damages . . ., the plaintiff must lay a basis for a reasonable estimate of the extent of the harm caused by the breach.'") (citation omitted).  Defendants are entitled to notice of how plaintiff was damaged and how she calculated those damages to some degree of certainty.  Plaintiff's vague discovery responses and failure to

appear at her deposition render her unable to meet her burden of proof with respect to damages, and defendants are entitled to summary judgment.  SOF ¶¶ 33-34, 38-42.[4]

**B.      Plaintiff's Failure to Provide Proof of Insurance Precludes Her Claim.**

As the first party to breach her obligations related to the escrow provisions and the requirement to provide proof of insurance, plaintiff "can neither insist on performance by the other party nor maintain an action against the other party for a subsequent failure to perform." *Jackson v. Rich,* 28 Utah 2d 134, 499 P.2d 279, 280 (1972).  Section 3 to the deed of trust specifically addresses the situation here, where the lender has waived the borrower's obligation to pay a monthly escrow fee for items like taxes and hazard insurance.  In the case of such a waiver, "if Lender requires, [borrower] shall furnish to Lender receipts evidencing [] payment [of Escrow Items, including hazard insurance] <u>within such time period as Lender may require</u>." SOF ¶ 3, Ex. C, p. 4.  Plaintiff's obligation to provide that proof of insurance was "a covenant and agreement" of the deed of trust under Section 9 of the deed of trust, which provides that "any amounts disbursed by Lender under this Section 9 shall become additional debt of borrower secured by this agreement."  Ex. C at p. 7.

In this case, BANA explicitly requested proof of insurance on May 19, 2009, and gave plaintiff nearly two months to provide it.  SOF ¶ 9.  When she failed to do so, BANA purchased

---

[4] In Utah, the general rule is that "there is no recovery of damages for mental anguish stemming from a breach of contract."  *Ams. Disabled for Accessible Pub. Transp. v. SkyWest Airlines, Inc.,* 762 F. Supp. 320, 326 (D. Utah 1991).  "[I]n rare circumstances . . . . a non-breaching party may recover general and/or consequential damages related to emotional distress or mental anguish arising from a breach of contract when such damages were both a foreseeable result of the breach of contract and *explicitly* within the contemplation of the parties at the time the contract was entered into."  *Cabaness v. Thomas,* 232 P.3d 486, 508 (Utah 2010).  Plaintiff has failed to produce evidence of any mental anguish, or any evidence indicating that such damages were "explicitly within the contemplation of the parties at the time the contract[s]" were executed.

a policy and informed plaintiff that it had done so on July 10, 2009.  SOF ¶ 10.  Plaintiff still

failed to respond at all to the request for proof of insurance, and on April 5, 2010, BANA again

informed plaintiff that it had no proof of insurance and that if it was not provided within 30 days,

another policy would be purchased.  SOF ¶ 11.  When plaintiff again failed to respond or provide

proof of insurance, another policy was purchased and plaintiff was informed of that purchase on

May 9, 2010.  SOF ¶ 12.  Plaintiff's failure to provide proof of insurance for over fourteen

months after it was requested is a clear breach of the escrow provisions of the deed of trust,

triggering BANA's right to procure the insurance and pass the cost to plaintiff.

When plaintiff finally did provide proof of insurance, in July 2010, BANA had no

obligation to attempt to recover the funds it had disbursed for those policies, one of which had

already expired, or credit them towards plaintiff's account.  SOF ¶ 16; Ex. C, pp. 4, 7.  BANA

did voluntarily undertake those efforts, but during that process, BANA mistakenly sent a check

to plaintiff for $1,128, the precise amount of each insurance policy it had purchased.  SOF ¶¶ 17-

19.  But rather than return the funds or otherwise question why her lender had sent her $1,128,

plaintiff cashed the check.  SOF ¶ 19.  As a result, her escrow account had a balance of -$1,128,

and BANA tried to recoup that amount by dividing it across twelve payments.  SOF ¶ 20.

Plaintiff's breach of her obligation to provide proof of insurance authorized BANA to

purchase insurance and pass the costs to plaintiff.  All of the issues in this case result from

plaintiff's failure to provide proof of insurance, as required by Section 3 of the deed of trust, for

more than fourteen months after it was initially requested.  That breach bars her from claiming

that BANA breached its obligations by attempting to recover the cost of the check related to

those policies that was mistakenly sent to plaintiff.  Plaintiff had every opportunity to avoid

escrow related charges by complying with her basic obligations under the deed of trust.  Had plaintiff complied with those obligations, the chain reaction of events leading to the purchase and cancellation of the two LPPs, the mistaken $1,128 check sent to plaintiff that she cashed, and the additional $94/month added to her monthly obligation, would not have occurred.

As the first party to breach the escrow obligations of the parties' contract, plaintiff is precluded from recovery for the ultimate results of that breach.  *See, e.g., Fisher v. Taylor*, 572 P.2d 393, 395 (Utah 1977) (first party to materially breach a contract "cannot be heard to complain of a subsequent breach").  Under the first breach rule, "one party's material breach of a contract will excuse the other party from performing his reciprocal obligations due under the same contract."  *Murphy Oil USA Inc. v. Wood*, 438 F.3d 1008, 1023 (10th Cir. 2006). Plaintiff's material failure to provide the requested proof of insurance discharges BANA's reciprocal obligation not to charge for it.  *See Resolution Trust Corp. v. Fed. Sav. & Loan Ins. Corp.*, 25 F.3d 1493, 1501 (10th Cir. 1994); *Bonneville v. Green River Dev't*, 164 P.3d 433, 442 (Utah Ct. App. 2007) (if the plaintiff is the first to breach, "'[sh]e can neither insist on performance by the other party nor maintain an action against the other party for a subsequent failure to perform.'" (quoting *Jackson*, 499 P.2d at 280)).

### C.    Plaintiff's Breach of Contract Claim is Moot.

Even if this Court ultimately concluded that plaintiff were entitled to some damages or an award of attorney fees, that claim is moot for the reasons set forth in defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1), filed concurrently with this motion.

## II.    PLAINTIFF'S INTENTIONAL / NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS.

"'If the trial court determines that a defendant's conduct was not outrageous as a matter of law, then the plaintiff's claim fails, and a court may properly grant the defendant summary judgment on an [negligent or] intentional infliction of emotional distress claim.'" *Blakely v. USAA Cas. Ins. Co.*, 633 F.3d 944, 950 (10th Cir. 2011) (quoting *Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524 (Utah 2002)).   In order survive summary judgment on her emotional distress claim, plaintiff must demonstrate three basic elements.

First, plaintiff bears "a heavy burden" to provide proof that the defendant exhibited "extraordinarily vile conduct, conduct that is atrocious, and utterly intolerable in a civilized community." *Johnson v. Rodrigues*, 293 F.3d 1196, 1207 (10th Cir. 2002) (internal quotation marks omitted).   "To be considered outrageous, the conduct must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair." *Oman v. Davis Sch. Dist.,* 194 P.3d 956, 969 (Utah 2008) (internal quotation marks omitted).   "Additionally, conduct is not outrageous simply because it is tortious, injurious, or malicious, or because it would give rise to punitive damages, or because it is illegal." *Prince*, 56 P.3d at 536.   "Whether the distress is severe enough and the alleged conduct is outrageous enough" to survive a summary judgment motion "are initially legal questions for the court to resolve." *Metcalf v. Metro. Life Inc.*, 961 F. Supp. 1536, 1545 (D. Utah 1997).

Second, an "emotional distress claim requires evidence of 'an actual and proximate causal link between the tortious conduct and the emotional distress.'" *Jones v. U.S. Child Support Recovery*, 961 F. Supp. 1518, 1523 (D. Utah 1997) (quoting *White v. Blackburn*, 787 P.2d 1315, 1317 (Utah Ct. App. 1990)).

Third, the plaintiff is required to provide "proof of actual damages" in order to establish that the infliction of emotional distress "actually caused a cognizable injury." *Id.* While "severe emotional distress can cause mental illness and that genuine mental illness constitutes real harm," "practicality demands that the standard of proof in such cases be more than merely subjective." *Harnicher v. Univ. of Utah Medical Center*, 962 P.2d 67, 71 (Utah 1998). "[T]he emotional distress suffered must be severe; it must be such that a reasonable [person,] normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 975 (Utah 1993) (internal quotation marks omitted).

Proof of bodily harm is required. *See Harnicher*, 962 P.2d at 71. "Such a threshold test is particularly necessary because the existence of and cause of a mental illness often is not obvious in a manner comparable to a physical injury or illness." *Id.*; s*ee also Osmond v. Litton Loan Servicing, LLC*, No. 1:10-cv-11, 2011 WL 1988403, at *4 (D. Utah May 20, 2011) ("Unsubstantiated, conclusory allegations of severe emotional distress are insufficient to state a claim for" negligent infliction of emotional distress.)

In *Hansen*, "construction workers who had unknowingly inhaled asbestos sought to recover damages for negligent infliction of emotional distress due to fear of cancer." *Harnicher*, 962 P.2d at 70 (Utah 1998). In response to the defendant's motion for summary judgment, the construction workers did not provide "any evidence indicating that their distress is sufficiently severe to constitute mental illness," nor did they offer "evidence that their distress has resulted in physical symptoms." *Hansen*, 858 P.2d at 975. The plaintiffs' statements that they "have suffered severe anxiety as a result of their exposure" to asbestos, the Utah Supreme Court held,

were "mere unsubstantiated opinions," which did "not create a triable issue of fact that would withstand summary judgment." *Id.*

Here, plaintiff has no evidence to satisfy the first and third elements.  As set forth above, defendants' conduct was anything but "extraordinarily vile," or "atrocious."  BANA simply purchased insurance based on its reasonable belief that it needed to do so in order to protect its security interest after plaintiff failed to provide evidence to the contrary.  Upon receiving the belated proof of insurance, BANA voluntarily undertook to obtain a refund of those policies to credit plaintiff's account.  SOF ¶¶ 17-20.  BANA's mistake in sending plaintiff a refund check for an insurance policy that she never paid for, and its subsequent attempt to recover those funds, was all set in motion by plaintiff's refusal to comply with her obligations to provide proof of insurance under the deed of trust.  Rather than alerting BANA to the error, plaintiff cashed the $1,128 check.  Plaintiff has no evidence of any conduct by BANA even approaching the standard necessary to satisfy an emotional distress claim.

Plaintiff has further failed to show evidence of damages meeting the heavy burden for an emotional distress claim.  She has no proof that she suffered bodily harm or mental illness.  (*See* SOF ¶ 34, Ex. O, p. 7).  Plaintiff's vague discovery responses about emotional stress and embarrassment do not meet the standard.  Even if the Court were to conclude that defendants' conduct was outrageous enough as a matter of law and that her mental distress was severe, without proof of actual, physical injury, a claim for infliction of emotional distress cannot lie. Summary judgment is appropriate.

**III.    PLAINTIFF'S FDCPA CLAIM FAILS AS A MATTER OF LAW.**

Plaintiff's FDCPA claim fails because defendants are not "debt collectors" under the Act and plaintiff has no evidence of damages.  Further, to the extent the Court determines plaintiff might be entitled to statutory damages, the claim is moot for the reasons set forth in defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1), filed concurrently herewith.

**A.    The FDCPA Does Not Apply to Defendants Because Defendants are Creditors, not Debt Collectors.**

The Fair Debt Collection Practices Act (**FDCPA**), 15 U.S.C. § 1692 *et seq*., "regulates interactions between consumer debtors and 'debt collector[s],' defined to include any person who 'regularly collects . . . debts owed or due or asserted to be owed or due *another*.'"  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. ___, 130 S.Ct. 1605, 1608 (2010) (alteration in original) (quoting 15 U.S.C. §§ 1692a(5),  (6)) (emphasis added).  To survive summary judgment, not only must a plaintiff establish that she is a creditor and money owed that is the subject of the litigation is a "debt" within the meaning of the FDCPA, the FDCPA also requires that a "debt collector" be the one engaging in the conduct that plaintiff claims is prohibited by the FDCPA.  The FDCPA exempts from its definition of "debt collector":

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such a person.

15 U.S.C. § 1692a(6)(F)(iii).   Moreover, under the FDCPA, "creditors," along with any companies with "related common ownership or affiliated by corporate control" with that creditor are exempt from the FDCPA's definition of "debt collector."  *See* 15 U.S.C. § 1692a(6)(A)-(B).

Congress' purpose for distinguishing between "debt collectors" and "creditors" is clear.[5] The FDCPA's intended target was third-party or independent collectors of delinquent debts. Independent contractors, Congress reasoned, generally have no future contact with the consumer and are therefore likely to place less importance on the consumer's opinion of their debt collection tactics. Creditors' actions, Congress observed, are by contrast often restrained by their desire to protect their good will with the consumer. *See* S. Rep. No. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696; S. Rep. No. 95-382, 95th Cong., 1st Sess. 3, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698.

"'The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.'" *Solomon v. HSBC Mortg. Corp.*, 395 Fed. Appx. 494, 495 (10th Cir. 2010) (unpublished) (quoting *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir. 1985)).[6]

Likewise, Congress' purpose behind the "not in default" exemption found in section 1692a(6)(F)(iii) of the FDCPA is to exclude from the FDCPA those who acquire a debt for reasons other than for delinquency-based debt-collection purposes. *See e.g., Brown v. Morris*, 243 Fed. Appx. 31, 34-35 (5th Cir. 2007) (unpublished). "If the one who acquired the debt

---

[5] The FDCPA defines a "creditor" to mean "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4).

[6] *See also James v. Wells Fargo Bank, NA Corp.*, No. 2:10-CV-1205 TS, 2011 WL 1874707, at *3 n.17 (D. Utah May 11, 2011); *Bentley v. Bank of America, N.A.*, 773 F. Supp. 2d 1367, 1371 (S.D. Fla. 2011) ; *Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009) ; *Nool v. HomeQ Servicing*, 653 F. Supp. 2d 1047 (E.D. Cal. 2009); *Zsamba ex rel. Zsamba v. Cmty. Bank, Abilene, Kan.*, 63 F. Supp. 2d 1294, 1300 (D. Kan. 1999).

continues to service it, it is acting much like the original creditor that created the debt.  On the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector." *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003).

"Under section 1692a(6)(F)(iii) of the FDCPA, a loan servicer . . . is only a 'debt collector' within the meaning of the FDCPA if it acquires the loan after it is in default." *Kee v. RG Crown Bank*, 656 F. Supp. 2d 1348, 1355 (D. Utah 2009).  *See id.* (dismissing plaintiff's FDCPA claim against the plaintiff's loan servicer that because the plaintiff failed to allege that the servicer began servicing the note after default, and dismissing plaintiff's FDCPA claim against the note holder because it could not have been attempting to collect the debt of another as a matter of law).  *See also* S. Rep. No. 95-382, 95th Cong., 1st Sess. 3-4, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698 (stating that a "debt collector," as used in the FDCPA should not include "mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing.").

"'For purposes of applying the Act to a particular debt, these two categories — debt collectors and creditors — are mutually exclusive.'"  *FTC v. Check Investors*, 502 F.3d 159, 173 (3d Cir. 2007) (internal quotation marks omitted).  *Accord Munk v. Fed. Land Bank of Wichita*, 791 F.2d 130, 132 (10th Cir. 1986).  Neither the servicer nor the creditor becomes a debt collector merely because it refers to itself as a debt collector,[7] rather the designation is dependent upon when if, at all, the relevant debt went into default.[8]

---

[7] *See, e.g., Llewellyn v. Allstate Home Loans, Inc.*, 795 F.Supp. 2d 1210, 1232 n.28 (D.Colo. 2011) ("The Court also rejects Plaintiff's implication that Ocwen should be treated as a 'debt collector' under the FDCPA because it was representing itself as a 'debt collector attempting to collect a debt' in its letters to Plaintiff."); *Nwoke v. Countrywide Home Loans, Inc.*, 251 Fed. Appx. 363, 365, 2007 WL 3037118, at *1 (7th Cir. 2007) (finding such a "statement has nothing

Here, CHLS began servicing her loan in September 1, 2007.  SOF ¶ 5.  BANA's parent company bought CHL's and CHLS's parent company on June 1, 2008, CHLS was renamed BAC on April 27, 2009, which subsequently merged into its parent company BANA on July 1, 2011.  SOF ¶¶ 6-8, Exs. H-J.  Defendants' servicing of plaintiff's loan predates any default on the loan, which occurred at the earliest on July 2009 when she failed to timely respond to the first request for proof of insurance coverage. SOF ¶¶ 9-10.  Defendants' actions that plaintiff complains of occurred in June March 2012.  SOF ¶ 29.  Accordingly, the undisputed facts reveal that BANA acquired the servicing rights to the loan prior to default and is therefore considered a "creditor" under the FDCPA, and CHL is sufficiently affiliated with BANA to also be considered a "creditor" rather than a "debt collector" under the FDCPA, *see* 15 U.S.C. § 1692a(6)(A)-(B), (F)(iii).   In short, multiple exceptions exclude defendants from the scope of the FDCPA.  Plaintiff's FDCPA claim against defendants fails and summary judgment is proper.

   **B.     Even Assuming the FDCPA Did Apply to Defendants, Plaintiff has No Evidence of Actual Damages.**

---

to do with whether Countrywide is a 'debt collector' for purposes of the FDCPA."); *Yagman v. JP Morgan Chase Bank, N.A.*, 2012 WL 999835, at *3 (C.D. Cal. 2012) (finding "even if JPMorgan Chase identifies itself as a 'debt collector' . . ., case law is clear that FDCPA does not apply to assignees of a mortgage debt, unless the debt was in default at the time of assignment.").

[8] "The Tenth Circuit has yet to explore" what "in default" means in the context of section 1692(6)(F)(iii) but at least one sister district court has looked to applicable state law.  *See Kvassay v. Hasty*, 236 F. Supp. 2d 1240, 1270 (D. Kans. 2002).  However, a better approach may be to simply look to the contract at issue.  *See* BLACK'S LAW DICTIONARY at 449 (9th ed. 2004) (defining default as "The omission or failure to perform a contractual duty; esp., the failure to pay a debt when due.").  Plaintiff offers no evidence and points to no state law to support the notion that she was in default of her loan prior to September 1, 2007, when BANA acquired the servicing rights to her loan.

In her discovery responses, the only evidence plaintiff has presented in this case, she refused to provide any response to defendants' query about the damages she allegedly suffered pursuant to the FDCPA, instead merely stating the question "is premature as discovery is ongoing."  SOF, ¶ 34, Ex. O, pp. 5-6.  Plaintiff also pointed to the statutory provisions of 15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692k. *Id.*   Plaintiff's failure to provide any evidence of actual damages entitles defendants' to summary judgment on her claim.  *See Dill v. City of Edmond*, 155 F.3d 1193, 1209 (10th Cir. 1998).  Even if plaintiff were asking only for statutory damages, she has failed to produce evidence of any such violation.  Even if she had, the claim is still subject to dismissal on mootness grounds for the reasons set forth in defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1), filed concurrently with this motion.[9]

## IV.   PLAINTIFF CANNOT STATE A PRIVATE CAUSE OF ACTION UNDER FCRA.

For her fifth claim, plaintiff alleges that BANA "furnished false, misleading, and inaccurate information to various credit reporting agencies regarding Ms. Hadley and her mortgage in direct violation of 15 U.S.C. § 1681 et seq."  (SAC, ¶ 132).  She then alleges that BANA improperly reported that her loan was delinquent and in foreclosure, failed to perform internal reviews of her account prior to its reporting, and knew or should have known that the reports were false.  (SAC, ¶¶ 133-136).  Plaintiff argues that she is entitled to damages for the

---

[9] Moreover, even assuming *arguendo* defendants should be deemed to be "debt collectors" under the FDCPA and the FDCPA claim was not mooted, defendants' actions are protected by the FDCPA's safe harbor provision because their actions were based on a mistake of fact rather than a mistake of law.  *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. ---, 130 S.Ct. 1605, 1612, 1637 (2010) (concluding that "Congress chose to permit injured consumers to recover actual damages, costs, fees, and modest statutory damages for 'intentional' conduct, including violations resulting from mistaken interpretation of the FDCPA," but the phrase "'procedures reasonably adapted to avoid any such error'" in section 1692k(c) "most naturally evokes procedures to avoid clerical or factual mistakes.").

willful misreporting pursuant to 15 U.S.C. § 1681n.  (SAC, ¶ 138).  In response to defendants'

interrogatory regarding her $25,000 damage claim under FCRA, plaintiff merely stated that the

"damage calculations are based upon protection of consumers."  SOF, ¶ 34 , Ex. O, p. 4.

Plaintiff has offered no evidence to support any of her allegations, and summary

judgment is appropriate.  Even if plaintiff had produced evidence to support her allegations, the

claim would still fail as a matter of law because a private right of action against a "furnisher" of

credit information, like defendants, does not lie under the plain language of the statute and

binding precedent of the Tenth Circuit.

Plaintiff purports to rely on Section 1681n as the basis for liability in the SAC.  (SAC

¶ 138).  Sections 1861n and 1861o, however, limit liability to "consumer reporting agencies" or

"users of information" provided by CRAs.  *See* 15 U.S.C. §§ 1681a(d)(1) & (2)(A)(i), (f),

1681e(d)(1)(A); 1681h(e); 1681n; 1681o, 1681s-2(c); *Mitchell v. First Nat. Bank of Dozier*, 505

F.Supp. 176, 177 (M.D.Ala. 1981).[10]  Accordingly, even if defendants inaccurately furnished

information to CRAs due to negligence or willful misconduct, plaintiff lacks a private right of

action under these Sections.  *See, e.g.,* 15 U.S.C. §§ 1681s-2(d); 1681m(h)(8)(A)-(B); *Sanders v.

Ethington*, No. 2:10-cv-183, 2010 WL 5252843 at *5 (D.Utah Dec. 16, 2010); *Gonzalez-Bencon

v. Doral Bank*, 759 F.Supp.2d 229, 234 (D. Puerto Rico 2010).

---

[10] *See also Chiang v. Verizon New England Inc., 595 F.3d 26, 35 (1st Cir. 2010); Yutesler v.
Sears Roebuck & Co., 263 F.Supp.2d 1209 (D.Minn. 2003); Nelson v. Chase Manhattan
Mortgage Corp., 282 F.3d 1057, 1060 (9th Cir. 2002), Vazquez–Garcia v. Trans Union De
Puerto Rico, 222 F.Supp.2d 150, 157 (D.Puerto Rico 2002); Hawthorne v. Citicorp Data
Systems, Inc., 216 F.Supp.2d 45 (E.D.N.Y.2002); DiGianni v. Stern's, 26 F.3d 346, 349 (2d Cir.
1994); Alvarez Melendez v. Citibank, 705 F.Supp. 67, 69-70 (D. Puerto Rico. 1988); Rush v.
Macy's New York, Inc., 775 F.2d 1554, 1557 (11th Cir. 1985).*

Section 1681s-2(a) of FCRA governs the duties of furnishers of information to credit reporting agencies, such as defendants. *See Sanders v. Mtn. Am. Fed. Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012). And while the FCRA "gives consumers a private right of action against those who violate its provisions . . . that right of action is limited to claims against the credit reporting agency; it does not extend to furnishers." *Sanders*, 689 F.3d at 1147 citing § 1681n (right of action against willful violators) and § 1681o (right of action against negligent violators).[11] Other sister circuits have come to the same conclusion. *See, e.g., Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2nd Cir. 2012); *Boggio v. USAA Federal Sav. Bank,* 696 F.3d 611, 615-16 (6th Cir. 2012); *SimmsParris v. Countrywide Fin. Corp.,* 652 F.3d 355, 358 (3d Cir. 2011); *Chiang v. Verizon New England Inc.,* 595 F.3d 26, 35 (1st Cir. 2010); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008); *Nelson v. Chase Manhattan Mort. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002).

"Although a consumer may dispute credit information directly to a furnisher, the consumer has no private right of action if the furnisher does not reasonably investigate the consumer's claim after direct notification." *Alcala v. Popular Auto, Inc.*, 828 F. Supp. 2d 437, 439-40 (D. Puerto Rico 2011) (citing *Chiang,* 595 F.3d at 35). *Accord Sanders*, 689 F.3d at 1147 n.9 ("Although the Sanderses' brief argues their case does not rely on the duty to accurately report in § 1681s–2(a), . . . .[t]heir complaint specifically alleged Salt Lake City Credit Union 'failed to adhere to 15 U.S.C. § 1681s–2, by reporting false information to the bureaus and then

---

[11] *See also Pinson v. Equifax Credit Information Servs., Inc.*, 316 Fed. Appx. 744, 751 (10th Cir. 2009) (section "1681s-2(a) provides no private cause of action" against furnishers of information); *Jensen v. American's Wholesale Lender*, No. 1:09-cv-169, 2010 WL 2720745, at *4 (D. Utah Jul. 8, 2010), *aff'd* 425 Fed. Appx. 761 ("In other words, Congress has explicitly precluded any private right of action relating to the duties imposed on furnishers of information under § 1681s–2(a).").

not rectifying the errors when confronted.'"); *Jensen v. American's Wholesale Lender*, No. 1:09-cv-169, 2010 WL 2720745, at *4 (D.Utah Jul. 8, 2010), *aff'd* 425 Fed. Appx. 761; *Pinson v. Equifax Credit Information Servs., Inc.*, 316 Fed. Appx. 744, 751 (10th Cir. 2009). Instead, violations of a furnishers' duties to provide accurate information to CRAs should be "enforced exclusively" by the Office of the Comptroller of the Currency and the Utah Attorney General. *See* 15 U.S.C. §§ 1681s-2(d); 1681s(b)(1)(A), (c).

Here, there can be no genuine dispute as to the material fact that defendants are furnishers of information, not CRAs. *See Tilley v. Global Payments, Inc.,* 603 F. Supp. 2d 1314, 1322 (D. Kan. 2009) (defining a furnisher of information as "an entity which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies.").[12]

Plaintiff has failed to produce any evidence that she disputed the reporting of the loan to a CRA, or that that a CRA contacted either defendant regarding the loan and requested an investigation. Given the above undisputed facts, plaintiff cannot enforce negligent (or even intentional) failings by either defendant to fulfill their statutory duties under FCRA as a matter of law. Defendants are entitled to summary judgment on plaintiff's FCRA violation claim.[13]

---

[12] *See also Ross v. Washington Mut. Bank,* 566 F. Supp. 2d 468, 474 n. 1 (E.D.N.C. 2008) ("The term 'furnishers of information' is generally understood to include various types of creditors, such as banks and other lenders, that provide credit information about their customers to other entities that issue consumer reports about the customers' credit worthiness." (internal citations omitted)).

[13] Even assuming *arguendo* that plaintiff could establish a statutory violation, which she cannot, her claim is moot for the reasons set forth in defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1), filed concurrently with this motion.

## V.   PLAINTIFF'S PUNITIVE DAMAGES CLAIM FAILS AS A MATTER OF LAW.

"Punitive damages are not available for breach of contract alone but may be recovered for a breach constituting an independent tort." *Ams. Disabled for Accessible Pub. Transp. v. SkyWest Airlines, Inc.,* 762 F. Supp. 320, 325 (D. Utah 1991). "[P]unitive damages for breach of contract, by themselves, are inappropriate 'even if intentional and unjustified.'" *TruGreen Companies, L.L.C. v. Mower Brothers, Inc.*, 199 P.3d 929, 933 (Utah 2008) (internal citation omitted); *see also Smith v. Grand Canyon Expeditions Co.*, 84 P.3d 1154, 1162 (Utah 2003) ("punitive damages are recoverable only for torts, not for breach of contract").

"Simple negligence will never suffice as a basis upon which [punitive] damages may be awarded. 'Punitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.'" *Behrens v. Raleigh Hills Hosp., Inc.*, 675 P.2d 1179, 1186 (Utah 1983) (quoting Restat. (Second) of Torts § 908 cmt. b at 465 (1979)). "[T]he defendant must either know or should know 'that such conduct would, in a high degree of probability, result in substantial harm to another,' and the conduct must be 'highly unreasonable conduct, or an extreme departure from ordinary care, in a situation where a high degree of danger is apparent.'" *Id.* at 1187 (citations omitted). "If there are no actual damages, an award of punitive damages is improper." *Kilpatrick v. Wiley, Rein & Fielding*, 37 P.3d 1130, 1148 (Utah 2001).

As detailed herein, plaintiff cannot establish she suffered any damages for any actionable tort. Plaintiff is not entitled to punitive damages, even if plaintiff had evidence that defendants had acted intentionally or recklessly, which she also lacks. Defendants are entitled to summary judgment on plaintiff's punitive damages claim.

## VI.    A NOTICE OF DEFAULT DOES NOT MEET THE DEFINITION OF A "WRONGFUL LIEN."

Plaintiff asserts that the recordation of the notice of default, which has now been rescinded, constituted a wrongful lien.  By statute, a wrongful lien is:

> any document that purports to create a lien, notice of interest, or encumbrance on an owner's interest in certain real property and at the time it is recorded is not:
>     (a) expressly authorized by this chapter or another state or federal statute;
>      (b) authorized by or contained in an order or judgment of a court of competent jurisdiction in the state; or
>     (c) signed by or authorized pursuant to a document signed by the owner of the real property.

UTAH CODE ANN. § 38-9-1(6) (emphasis added).

On the face of the notice of default, it does not purport to create a lien, notice of interest, or encumbrance on an owner's interest in real property.  *See, e.g.,* UTAH CODE ANN. § 57-9-4(1) (stating "[a]ny person claiming an interest in land may preserve and keep effective such interest by filing" a notice of interest); *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 231 (Utah 1987) ("[T]he nature of the . . . interest and the rights of its owner must be determined from the provisions of the instrument which created it." (internal quotation marks omitted)); *Russell v. Thomas*, 999 P.2d 1244, 1247-48 (Utah 2000) ("In determining whether a document purports to convey an interest in land, the court must 'focus[] on the document to see whether it identified the grantor, the grantee, and the interest granted or a description of the boundaries in a manner sufficient to construe the instrument as a conveyance of an interest in land.'" (quoting *Rocky Mountain Energy v. Utah State Tax Comm'n,* 852 P.2d 284, 286 (Utah 1993))).  Instead, it merely provides notice that BANA has determined that plaintiff is default under the note and deed of trust, and the amount owing as of a particular date.

An examination of relevant case law regarding what a notice of default actually is supports defendants' reading of the text of the notice of default rather than plaintiff's tortured interpretation.  "The power of sale conferred upon the trustee" under a deed of trust in Utah, "may not be exercised until the trustee first files for record . . . a notice of default" that includes certain specific information and the trustee waits 90 days for the debtor to exercise his or her statutory right of redemption.  UTAH CODE ANN. § 57-1-24(1).  "In a nonjudicial foreclosure, the notice of default requirement is intended to 'inform persons with an interest in the property of the pending sale of that property, so that they may act to protect those interests.'"  *Reynolds v. Woodall*, 285 P.3d 7, 11 (Utah Ct. App. 2012) (quoting *Concepts, Inc. v. First Sec. Realty Servs., Inc.,* 743 P.2d 1158, 1159 (Utah 1987) (per curiam))).  "The purpose and effect of the notice of default provisions contained in" state law, the Utah Supreme Court has held "is to afford a three-month period within which the obligation for which the trust property was conveyed as security may be reinstated."  *McCarthy v. Lewis,* 615 P.2d 1256, 1259 (Utah 1980).  *See also In re Richardson*, 23 B.R. 434, 440 (Bankr. D. Utah 1982) ("Under Utah law, First Interstate's recorded notice of default and published notice of sale placed the world on constructive notice of the debtors' failure to pay, of First Interstate's intent to sell the property, and of the impending sale on March 24.").  Moreover, "[o]nce the notice of default is cancelled the notice is deemed withdrawn" as a matter of law.  *RJW Media, Inc. v. CIT Group/Consumer Finance, Inc.*, 202 P.3d 291, 297 (Utah Ct. App. 2008).

Moreover, the legislative history of the Wrongful Lien Act "makes clear that the legislature intended that the definition of 'wrongful lien' should encompass *only common law liens*."  *Hutter v. Dig-It, Inc.*, 219 P.3d 918, 931 (Utah 2009) (emphasis added).  Even if

defendants had attempted to foreclose, neither the notice of default nor a resulting trustee's deed would constitute a wrongful lien under Utah law.  *See id.* (Concluding "the phrase 'not expressly authorized by . . . statute' in the Wrongful Lien Act does not include statutorily created liens that ultimately prove unenforceable.").

Here, plaintiff has no evidence of defendants causing anything to be recorded against the property except the notice of default, which was rescinded shortly after plaintiff filed suit.  Nor does plaintiff offer any case law to support the notion that the erroneous recordation of a notice of default constitutes a wrongful lien.  No material facts are in dispute and there is no factual or legal support for plaintiff's wrongful lien claim.  Defendants are entitled to summary judgment as a matter of law.[14]

## VII.    PLAINTIFF'S RESPA CLAIM FAILS AS A MATTER OF LAW.

In order to state a claim for violation of section 2605(e), a plaintiff must prove three elements.  Because she cannot establish either the first or the third element, defendants are entitled to summary judgment.

First, plaintiff must prove that she sent a qualified written request (**QWR**), which is defined as a written correspondence from the borrower to the servicer that

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that **the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower**.

---

[14] Even assuming that plaintiff could establish a claim for attorney fees under the wrongful lien statute, her claim is moot for the reasons set forth in defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1), filed concurrently with this motion.

28 U.S.C. § 2605(e)(1)(B) (emphasis added).  A QWR relates only to the "servicing" of the loan, *see id.* § 2605(e)(1)(A)  ("If any servicer . . . receives a qualified written request from the borrower . . . *for information relating to the servicing* of such loan . . ." (emphasis added)). Servicing is defined as requests relating to the "*receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan* . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id.* § 2605(i)(3) (emphasis added) .

Second, plaintiff must prove that BANA failed to respond to a QWR she sent or that BANA failed to make the correction to the servicing of her loan that she requested in a QWR. *Id*. § 2605(f)(1) .  *See Tripoli v. Branch Banking & Trust Corp.*, No. 2:12-cv-125-DN, 2012 WL 2685090, at *5 (D. Utah Jul. 6, 2012).

Third, plaintiff must prove that she suffered "actual damages . . . as a result of the failure." 28 U.S.C. § 2605(f)(1).  "Under RESPA, any damages the Court awards must be caused by a defendant's delay in response to a QWR" or delay in making the correction to the servicing of her loan that she requested in a QWR.  *See Toone v. Wells Fargo Bank, N.A.*, No. 2:11–cv–170, 2011 WL 4499299, at *5 (D. Utah Sept. 27, 2011) (citing *Rodeback v. Utah Fin.*, No. 1:09-cv-00134-TS, 2010 WL 2757243, at *3 (D. Utah Jul. 13, 2010)).

Here, the only evidence plaintiff has of having sent a QWR is the March 29, 2012 fax she sent to BANA asking about the reissuance of a check for one of her rejected payments.  Ex. G, ¶ 29; Ex. O, p. 8.  This fax does not qualify as a QWR because it is not an inquiry into the servicing of her loan as defined by RESPA as it does not relate to the "*receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan* . . . and making the

payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 28 U.S.C. § 2605(i)(3) (emphasis added). Instead, plaintiff's fax is merely a request that BANA reissue a check to plaintiff that she had mistakenly thrown in the trash. Ex. G, ¶ 29, and Ex. 12 thereto. There is nothing periodic about the payment at issue in plaintiff's fax, nor was the payment at issue from the borrower. Thus, even assuming BANA did not respond to the March 29, 2012 fax and/or failed to reissue the check as requested in plaintiff's fax, as a matter of law BANA's failure to do so is not a violation of RESPA. *See, e.g., Tripoli*, 2012 WL 2685090, at *5 ("Because the Tripolis did not assert that the account was in error, the letter was not a QWR and the response by Hopp & Associates was not deficient. Therefore, the Tripolis have stated no allegation that would entitle them to relief under 12 U.S.C. § 2605."); *Thayne*, 2010 WL 3546929, at *3 ("A QWR relates only to the 'servicing' of the loan"); *Kee v. Fifth Third Bank*, No. 2:06-cv-00602, 2009 WL 735048, at *11 (D. Utah Mar. 18, 2009) (concluding bank had no duty under RESPA to respond to written correspondence unrelated to servicing).

Even if the March 29, 2012 fax was a QWR, her RESPA claim still fails because plaintiff cannot tie any damages she claims to have suffered to defendants' failure to answer the March 29, 2012 fax or to reissue the check within 20 days of receipt of the fax. *See, e.g., Lal v. American Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) ("allegations made under a separate cause of action are insufficient to sustain a RESPA claim for actual damages as they are not a direct result of the failure to comply. Nor does simply having to file suit suffice as a harm warranting actual damages."). *Accord Albury v. Am. West Bank*, 1:10-cv-197-TS, 2011 WL 902617, at *2 (D. Utah Mar. 15, 2011) ("Even if Defendants had not responded, Plaintiff has

failed to present any allegations demonstrating a causal link between any damages and the alleged RESPA violations."); *Thayne v. Taylor, Bean & Whitaker Mortg. Corp.*, No. 1:09–cv–141, 2010 WL 3546929, at *3 (D. Utah Sept. 10, 2010) ("RESPA requires borrowers to show actual damages as a result of a failure to comply with its provisions[.]").[15]

Plaintiff's final cause of action fails to state a claim under RESPA for numerous reasons. The material facts are not in dispute, and summary judgment on the RESPA claim is appropriate.

## VIII.   PLAINTIFF'S DECLARATORY RELIEF CLAIM IS MOOT BECAUSE THE NOTICE OF DEFAULT HAS BEEN CANCELLED AND NO FORECLOSURE SALE IS PENDING.

For the reasons set forth in defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1), filed concurrently with this motion. plaintiff's first cause of action is moot and therefore must be dismissed.[16]   In the interest of conservation of judicial resources, defendants incorporate their argument in the motion to dismiss by reference in its entirety.

## CONCLUSION

Based on the foregoing, the Court should grant defendants' motion for summary judgment and dismiss each and every cause of action in plaintiff's second amended complaint with prejudice.

---

[15] Even assuming that plaintiff could establish some damages under RESPA, her claim is moot for the reasons set forth in defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1), filed concurrently with this motion.

[16] Even if it were not rendered moot, plaintiffs' request for declaratory relief as a cause of action is misplaced.   "[R]equests for declaratory or injunctive relief are actually remedies for other alleged causes of action and do not qualify as causes of action on their own."   *Hoverman v. CitiMortgage*, 2:11–cv–118, 2011 WL 3421406, at *10 (D. Utah Aug. 4, 2011).

Dated this 15th day of February, 2013.

AKERMAN SENTERFITT LLP

/s/ Chandler P. Thompson

Chandler P. Thompson
David P. Billings
*Attorneys for Defendants Bank of America,*
*N.A. individually and as successor by*
*merger to BAC Home Loans Servicing, L.P.,*
*and Countrywide Home Loans, Inc.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of February, 2013, I caused to be served a copy of

the **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** and **MEMORANDUM OF**

**POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the following persons in the

manner indicated below at the following addresses:

> Steven A. Christensen
> Christensen, Young & Associates, PLLC
> 9980 South 300 West, #200
> Sandy, Utah 84070
> Email: stevenchristen@gmail.com

☐ by **E-mail**
☒ by **CM/ECF**
☐ by **Facsimile Transmission**
☐ by **First Class Mail**
☐ by **Hand Delivery**

*/s/ Chandler P. Thompson*